UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**KIARA KEMP**                                   **CIVIL ACTION**

**VERSUS**                                       **NO. 15-5739**

**ABC INSURANCE COMPANY, ET AL**                 **SECTION "B"(5)**

ORDER AND REASONS

Before the Court is Defendant Hyundai Steel Company's ("Defendant HSC") "Motion for Summary Judgment" (Rec. Doc. 49), and Plaintiff Kiara Kemp's ("Plaintiff") Response in Opposition (Rec. Doc. 50). For the reasons outlined below,

**IT IS ORDERED** that Defendant HSC's motion for summary judgment is **GRANTED** and Plaintiff's claims against Defendant HSC for negligence and/or liability are hereby **DISMISSED with prejudice**.

**FACTS AND PROCEDURAL HISTORY**

The instant controversy stems from an injury sustained by Plaintiff while aboard the M/V UNITED TENORIO (the "Vessel") while inventorying cargo as a work clerk for Coastal Cargo Company. Rec. Doc. 50 at 1. The subject incident occurred on May 25, 2014, when Plaintiff was assigned the task of inventorying cargo in a particular hold on the Vessel. *Id*. The cargo, manufactured and shipped by Defendant HSC, consisted of individually wrapped pieces of steel-reinforcing bars, i.e. rebar. Rec. Doc. 49-1 at 3. Defendant HSC sold the cargo to Steelinvest Jersey Ltd. *Id*. For

shipment, Defendant HSC packaged the individual pieces of rebar into tight bundles. *See* Rec. Doc. 49-2 at 114-24; *see also* Rec. Doc. 49-3. Pursuant to respective agreements, an entity named Kyunghan Company was responsible for stevedoring and placing the bundles of rebar onto the Vessel using slings and cranes. Rec. Doc. 49-3. Another company, Hyundai Glovis was contracted to lash and shore the bundles of rebar with binding and "dunnage" once the bundles were placed into onto the Vessel by Kyunghan. *Id*.

The uncontested facts of this case are that on the date of incident, Plaintiff entered the hold to record certain information on the bundles of rebar. Rec. Doc. 49-2 at 83. During the process of recording inventory, Plaintiff jumped about four bundles down from her position on one of the bundles of rebar to another. Rec. Doc. 49-2 at 127. Plaintiff asserted in her deposition testimony that almost immediately after she landed she heard a loud cracking sound and fell as a bundle of rebar hit her calf and rolled onto her ankle. *Id*. at 131-37. Plaintiff later noted that the loud cracking sound she heard was the "dunnage"—the wood provided by Hyuandi Glovis to secure the bundles of rebar—breaking. *Id*. at 131.

Plaintiff filed suit in Louisiana state court on April 1, 2015, originally naming Wilhelmsen Ships Service, Inc., CWT Commodoties (USA) LLC, and The Board of Commissioners of the Port of New Orleans (incorrectly referred to as "The Port of New

Orleans") as defendants. Rec. Doc. 50-2 at 1. The suit was removed to federal district court on November 5, 2015. Rec. Doc. 1. Plaintiff dismissed all claims against the Port on October 9, 2015. Rec. Doc. 1-6 at 21. This Court then granted Defendant CWT's motion for summary judgment of all claims against it on January 20, 2016. Rec. Doc. 12.

Plaintiff filed an amended complaint on May 20, 2016, adding Defendant HSC as a party to this litigation. Rec. Doc. 15 at 2. After Defendant Wilhelmsen moved for summary judgment of the claims (Rec. Doc. 28), Plaintiff filed a motion to dismiss its claims against Wilhemsen without prejudice on January 4, 2017. Rec. Doc. 30. This Court granted that motion on January 5, 2017. Defendant HSC now files the instant motion for summary judgment. Rec. Doc. 49.

**LAW AND ANALYSIS**

**Summary Judgment Standard**

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no genuine issue as to any material fact. *Id*. A court reviewing a motion for summary judgment must view any inferences drawn from the underlying facts "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). If, after adequate time for discovery, the non-moving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case" that they would be required to prove at trial, then "the plain language of Rule 56(c) mandates the entry of summary judgment." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23(1986).

**Defendant HSC did not owe a duty to Plaintiff**

"The analysis of a maritime tort is guided by general principles of negligence law", under which an alleged tortfeasor is only liable to those to whom a duty is owed. *Consol. Aluminum Corp. v. C.F. Bean Corp.*, 833 F.2d 65, 67 (5th Cir. 1987). As Plaintiff states in her opposition to this motion for summary judgment, the fundamental question to be addressed is whether Defendant HSC owed a duty to the shipowner to warn of the hazards that Plaintiff contends resulted in her injuries. Rec. Doc. 50 at 5. According to Plaintiff, HSC, as manufacturer and shipper of the steel, owed a duty to warn those who handled the steel "of the foreseeable hazards inherent in the cargo of which the master could not reasonably have been expected to be aware". Rec. Doc. 50 at 5. The question before us is whether the injuries of Plaintiff were foreseeable hazards inherent in the cargo that the shipowner could not have reasonably been expected to be aware.

4

The existence of a duty is a question of law that is determined by examining a number of factors, "including most notably the foreseeability of the harm suffered by the complaining party." *Consol. Aluminum*, 833 F.2d at 67. While a shipper and manufacturer of a product does have a duty to warn a shipowner of the foreseeable hazards of the product of which he could not reasonably have expected to be aware, there is no duty to warn "of hazards of which the shipowner was aware or could reasonably be aware." *Canal Barge Co., Inc. v. Torco Oil Co.*, 220 F.3d 370, 376 (5th Cir. 2000).

Plaintiff has put forth no evidence to demonstrate that the steel rebar manufactured by Defendant HSC is inherently dangerous such that HSC had a duty to provide an additional warning to the shipowner and stevedores regarding its handling. Steel bars have no inherently hazardous quality that would create a latent danger of which a reasonable stevedore would be unaware. Further, Defendant HSC packaged individual pieces of steel in bundles before they were further bundled and packaged by other entities. Rec. Doc. 49-1 at 3. The bundling of the rebar by HSC was completed properly, as it is uncontested that the individual pieces in the bundles packaged by Defendant HSC did not break free during the accident. *See* Rec. Doc. 49-2 at 28.

The only deficiency in the storage or handling of the cargo that Plaintiff noted was the smaller than usual size of the

dunnage, which was provided by the loading stevedore Hyundai Glovis rather than Defendant HSC. *See* Rec. Doc. 49-2 at 19. A loading stevedore must store cargo in a ship "so that an expert and experienced stevedore will be able to discharge the cargo with reasonable safety by exercising reasonable care." *Couch v. Cro-Marine Transp., Inc.*, 44 F.3d 319, 327 (5th Cir. 1995). However, Plaintiff has put forth no evidence of an inherent danger in the cargo that would give rise to a legal duty on the part of Defendant HSC to provide a warning to the shipowner and subsequent handlers of the steel. Important to note here, is the fact that Plaintiff revealed in her deposition that because of the layout of cargo in the hatch it was customary for workers to "jump" down from the cargo. *See* Rec. Doc. 49-2. Absent a foreseeable danger, a manufacturer of a product does not have a duty to warn; especially where a shipowner could have been reasonably expected to be aware of the dangers that caused the injury. *Ionmar Compania Naviera, S. A. v. Olin Corp.,* 666 F.2d 897, 903 (5th Cir. 1982). As a result, Plaintiff has failed to carry her burden of proving the existence of an essential element of her claim.

New Orleans, Louisiana, this 18th day of April, 2018.

SENIOR UNITED STATES DISTRICT JUDGE